Rick Lawton, Esq.
State Bar # 00694
Law Office Rick Lawton Esq. P.C.
5435 Reno Hwy, Fallon, Nevada 89406
(775) 867-5599
(775) 867-2559 –fax

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE STATE OF NEVADA

| | |
|---|---|
| GRANT MATTHEW YOUNGREN,<br><br>*Plaintiff,*<br><br>vs.<br><br>OWNIT MORTGAGE SOLUTIONS , INC.,<br>A California Corporation; FIRST MAGNUS<br>FINANCIAL CORPORATION/CHARTER<br>FUNDING (a Mortgage Broker), a Foreign<br>Corporation; LITTON LOAN SERVICING,<br>LP, a Delaware Limited Partnership; AMY<br>BLAZER, individually a Nevada resident;<br>MERSCORP, INC. a Virginia corporation,<br>MORTGAGE ELECTRONIC REGISTRATION<br>SYSTEM, INC., a subsidiary of MERSCORP,<br>INC., a Delaware corporation, [MERS];  and<br>DOES 1-25 CORPORATIONS, DOES and<br>ROES 1-25 Individuals, [Partnerships,  or<br>anyone claiming any interest to the property<br>described in the action.<br><br>*Defendants.* | Case # **3:09-cv-00595-ECR-RAM**<br><br>**REPLY TO DEFENDANT**<br><br>**MORTGAGE ELECTRONIC**<br><br>**REGISTRATION SYSTEMS,**<br><br>**INC.'S OPPOSTITION TO**<br><br>**PLAINTIFFS' MOTION TO**<br><br>**REMAND TO THE THIRD**<br><br>**JUDICIAL DISTRICT COURT,**<br><br>**STATE OF NEVADA** |

COMES NOW, Plaintiff, GRANT MATTHEW YOUNGREN (hereinafter referred to

as Youngren) and in reply and response to the Defendant MORTGAGE

ELECTRONIC REGISTRATION SYSTEMS, INC.'S [hereinafter MERS] Opposition

To Plaintiff's Motion To Remand To The Third Judicial District Court in and for the

RICK Lawton's Law Office

State of Nevada. This response and Reply is supported by all pleadings and papers of record and the following points and authorities, and any oral argument the Court will request.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. PRELIMINARY REMARKS:

In the introduction, Defendant MERS indicates that Plaintiff argues that the claims set forth in their Complaint do not arise under TILA, HEIPA, RESPA, and that AMY BLAZER was not fraudulently joined. Defendant MERS also represents that Plaintiff does not state a single cause of action against AMY BLAZER [1].

Defendant specifically states that: "Plaintiff explicitly alleges that Defendants have violated TILA, HOEPA, and RESPA. Defendants point out only "casual references" to violation of Federal law. For example, Defendants properly note that:

---

[1] This ignores the specific allegation under the "facts" and "first cause of action' indicating:

"....with the individualy named Defendants herein secured, acquired and/or ratified the contract while luring unwary borrowers into "subprime" mortgages, i.e., loans with high interest rates and excessive costs....

... Defendant OWNIT MORTGAGE SOLUTIONS, INC. in concert with AMY BLAZER the individual Defendant named herein maintained policies and practices of pressuring and/or steering customers into subprime mortgages, and other inherently defective arrangements, which were likely to result in foreclosure, but which generated high profits on a short-term basis. Subprime loans were significantly more profitable than prime loans. ...

... AMY BLAZER, and unknown others, knowingly or intentionally made, or participated in the making of a home loan to Plaintiff, based solely upon the equity of the borrower in the home property and without determining that the borrower has the ability to repay the home loan from other assets, including, without limitation, income and/or financed a prepayment fee or penalty in connection with the refinancing by the original borrower of a home loan owned by the lender or an affiliate of the lender...."

RICK Lawton's Law Office

5435 Rene Hwy.
P.O. Box 1740
Fallon, Nevada 89406
Ph.: 775-867-5599
FAX: 775-867-2559
lawtonrick@earthlink.net

" Plaintiffs allege that Defendants' 'predatory scheme' is based, **in part**, on conduct which 'violated public policy, the Truth and Lending Act, the Real Estate Settlement Procedures Act, and the Home Ownership Equity Protection Act, **as well as Nevada's anti racketeering statutory scheme and other Nevada Statutes** noted herein..."

Notwithstanding a very detailed Complaint, Defendants reference portions of the allegations – and thereby attempt to expand what are **"casual or incidental references"** to Federal law so as to fabricate a Federal issue. Any "casual or incidental references" to Federal Violations are just that.  They are insufficient to create Federal jurisdiction. Plaintiffs specifically, **withdraw and move to strike any such reference to Federal Statues or Federal Law** to dispel the suggestion that Plaintiffs intended in any way to claim Federal Law. The bold statement that the conspiracy claims rest solely on violations of the Federal Statutes misstates the allegations.

**Conspiracy to Commit Fraud and Conversion:**

"Defendants violated Federal and State laws to procure Plaintiffs' signatures on the loans....
 Defendants' legal objective of packaging the loans made to Plaintiffs with other loans and selling the loans was accomplished by illegal means in procuring the loans through Defendants' violations of federal and state laws as alleged herein.

"Defendants knew prior to their origination of the loans or acceptance of the loans for servicing and subsequent transfer of the loans that Plaintiffs were not qualified to make the payments under the loans; however, Defendants knew or should have known that Plaintiffs would rely, and did rely, on Defendants' representations as alleged herein related to Plaintiffs ability to repay the loan or to refinance the loan in taking the loan and signing the documents...

RICK LAWTON'S LAW OFFICE

5435 Reno Hwy.
P.O. Box 1740
Fallon, Nevada 89406
Ph:: 775-867-5599
FAX: 775-867-2559
lawtonrick@earthlink.net

KICK Lawton's Law Office

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

… Defendants knew that the loans would be subject to foreclosure as a result of Plaintiffs' inability to make payments on the loans as the payments escalated during the term of the loan and/or as a result of Plaintiffs' inability to qualify to refinance the loans at a later date after the payments began to escalate because of changes in the interest rates and the arbitrary increase of payments by the servicers of the loans, and thus Defendants committed acts which constitute unlawful equity stripping.  Defendants further believed that the Plaintiffs would default on the loans and invested money based upon that belief, in other words these servicers invested in credit default swaps that were, in essence, a bet that the Plaintiffs would default on their loans.  Defendants intended to profit and did profit their investments in credit default swaps.

Defendants intended that Plaintiffs would default on the loan and Defendants would be in a position of seizing Plaintiffs homes in foreclosure actions, unlawfully depriving Plaintiffs of their homes….

Upon information and belief, in furtherance of the conspiracy, Defendants, Sierra Pacific successor in interest, intended that the Plaintiffs loans would be packaged with other loans and sold on the secondary market, resulting in a profit to Defendants. Including securitization of Deeds of Trusts, and loans, creation of Mortgage Backed Securities, (MBS); participation in Credit Swaps (CDS); participating in pooling and servicing agreements relating to home loans; payments to and from counterparties to DCS, Guarantee Investment Agreements (GIA) and Securities Lending transactions. Plaintiffs were not told, after the loan was made and demand for payment continued that Defendants may have received federal bailout monies, "TARP" monies, or other funds received from insurers, the Government (directly and indirectly).

There is absolutely no reference in the conspiracy allegation as to any

violations of a specific Federal Law, there was only a "casual incidental allegation

that the conduct violated **both** Federal and State law.

Defendants pointing out the reference to "Federal and State law violations"

attempts to ignore the specific findings of the 9th Circuit, as noted infra.,".

.. Consequently, the Ninth Circuit reasoned that **"[t]he rule that state law claims cannot be alchemized into federal causes of action by incidental reference …"**

4

5435 Reno Hwy.
P.O. Box 1740
Fallon, Nevada 89406
Ph:: 775-867-5599
FAX: 775-867-2559
lawtonrick@earthlink.net

KICK Lawton's Law Office

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## II. ARGUMENT

### A. PLAINTIFF'S CLAIMS DO NOT REQUIRE EVALUATION OF FEDERAL LAW, OR INVOKE FEDERAL LAW AS THE BASIS FOR RELIEF.

In short it appears that Defendants are claiming that the specific allegations of Plaintiffs' Complaint, must interpret a violation of TILA, HOEPA,RESPA. But Defendants fail to point out anywhere in the Complaint were there are any references to violations of said specific Federal Acts. [There is not one reference to the acts in any portion of the Complaint.]

The Court should however closely securitize Defendants references and cases supporting their position.

As more fully set forth herein, however, Plaintiff's Complaint focuses on strict violation of State Statute and Common Law contractual and tort theories. Plaintiff has referred to possible violations of the Federal acts only as a compilation to the STATE violations since much of the language may be the same. If the Defendants may have violated the Truth in Lending Act ("TILA"), or the Real Estate Settlement Procedures Act (" RESPA"), or Federal Home Ownership Equity Protection Act ("HOEPA"), the State action is not filed to pursue such conduct, nor has Plaintiff made reference to any such specific violations. Federal law does not preempt this action.

Failure to specifically state any specific Federal act violation or emphasis any specific Federal law violation, in conjunction with the fact Plaintiffs are the masters of their case, precludes removal. Defendants claim that the subject matter of

5

5435 Reno Hwy.
P.O. Box 1740
Fallon, Nevada 89406
Ph:: 775-867-5599 .
FAX: 775-867-2559
lawtonrick@earthlink.net

KICK Lawton's Law Office

5435 Reno Hwy.
P.O. Box 1740

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Plaintiff's Complaint hinges primarily on an interpretation of HOEPA, RESPA and TILA, is simply not true. See. E.g. Mullinax v. Radian Guar. Inc., 199 F. Supp. 2nd 311 (M.D.N.C. 2002).;

> "...Congress passed the McCarran-Ferguson Act. The Act was designed to protect against unintended federal intrusion in the insurance industry. Towards this end, the Act explains that the business of insurance shall "be subject to the laws of the several States," and then clarifies that
>
> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance ....
>
> 15 U.S.C. § 1012(a)-(b).
>
> Interpreting this language, the Supreme Court has ruled that the Act prevents the application of a federal law, thus allowing state law preemption, in certain circumstances. Humana Inc. v. Forsyth, 525 U.S. 299, 306-07, 119 S.Ct. 710, 716, 142 L.Ed.2d 753 (1999). Initially, the party seeking to invoke the Act must identify a state law that affects "the business of insurance," defined as "the relationship between the insurance company and the policyholder, the type of policy which could be issued, its reliability, interpretation, and enforcement." Sec. and Exch. Comm'n v. Nat'l Sec., Inc., 393 U.S. 453, 460, 89 S.Ct. 564, 569, 21 L.Ed.2d 668, 676 (1969). Furthermore, there must be a conflict between the state law and the federal law, for the Act only authorizes state preemption of federal statutes that would "invalidate, impair, or supersede" the state's law. 15 U.S.C. § 1012(b)..."

The Nevada Fair Lending act is similar to the Federal Acts, but constitutes a separate and distinct remedy, independent of Federal law. Plaintiffs are entitled to rely upon that remedy in State Court. That Federal law provides a similar remedy does not mandate removal. Plaintiffs do not allege a TILA violation, or any other Federal violation.

///

///

KICK LAWTON's Law Office

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Looking to Grable & Sons Metal Prod. v. Darue Engineering & Mfg., 545 U.S. 308 (2005)[2]

it is noted:

"…Federal-question jurisdiction is usually invoked by plaintiffs pleading a cause of action created by federal law, but this Court has also long recognized that such jurisdiction will lie over some state-law claims that implicate significant federal issues, see, e.g., Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577. Such federal jurisdiction demands not only a contested federal issue, but a substantial one. And the jurisdiction must be consistent with congressional judgment about the sound division of labor between state and federal courts governing § 1331's application. These considerations have kept the Court from adopting a single test for jurisdiction over federal issues embedded in state-law claims between non-diverse parties. **Instead, the question is whether the State-law claim necessarily stated a Federal issue, actually disputed and substantial, which a Federal forum may entertain without disturbing a congressionally approved balance of Federal and State judicial responsibilities**. Pp. 2366-2368…."(emphasis added)

Plaintiff does not state a Federal issue. There are no allegations Defendants failed provide detailed information about credit transactions relative to TILA., or costs and fees in HOEPA, or required forms under RESPA. Plaintiff relies exclusively upon State claims, and is entitled to do so.

This case does not turn on a determination of Federal law, but rather states common law principles, and statutes, which provide an ample and proper basis for resolution.  Defendants would have this Court believe the existence of a complementary Federal law allows removal, notwithstanding a Plaintiff's exclusive reliance upon State law. This assertion is inconsistent with the principle of limited

---

[2] Even the Grable Court noted: Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650, is not to the contrary. There, in finding **federal jurisdiction unavailable for a state tort claim** resting in part on an allegation that the defendant drug company had violated a federal branding law…

5435 Reno Hwy.
P.O. Box 1740

jurisdiction, the premise a Plaintiff is the master of his case, and with comity.

Furthermore, Defendants would place this Court in the position of being forced to

regularly interpret State laws --- notwithstanding the availability of State Courts.

Defendant's utilize Doran v. Purdue Pharma Co., 324 F. Supp. 2d 1147 (D.

Nev, 2004) in support of their position, but omit essential language. Omitted

language is inimical to Defendants' argument.

> "…Under the well-pleaded complaint rule, a plaintiff is permitted to structure a claim in a way that prevents removal from state court. Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Thus, the majority of cases heard by a federal court will be those in which "federal law creates the cause of action." Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986)…" (emphasis added)

We may also look to Ultramar America, Ltd. V. Dwell, 900 F.2d 1414, (9th Cir.

1990) noting:

> "…Construing Ultramar's well-pleaded complaint, this court cannot say that Ultramar's right to relief *necessarily* depends upon construction of a substantial question of any federal environmental law. Although Beacon may have violated federal environmental laws prior to its acquisition by Ultramar, in which case Ultramar might be entitled to relief, for every stated cause of action, **an alternative theory of relief, one dependent solely upon construction of state law, might also entitle Ultramar to relief** [FN5. Dwelle asserts that Ultramar could not be entitled to relief unless it established that Beacon violated either the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901 *et seq.,* or the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9601 *et seq.* However, Ultramar might also establish Dwelle's liability if Beacon violated certain provisions of the California Water Code, § 13000 *et seq.* In its complaint, Ultramar merely alleged that Beacon had violated "environmental laws." **The fact that an alternative theory of relief exists for each claim alleged in the complaint, one not dependent upon federal law, is itself grounds to defeat federal question jurisdiction**. [*See Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 810, 108 S.Ct. 2166, 2174, 100 L.Ed.2d 811 (1988). (emphasis added)

///

KICK Lawton's Law Office

KICK Lawton's Law Office

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Defendant is also relying on People of the State of Cal., ex. Rel Lockyer v. Dynery, Inc. 375 F.3rd 831 (9th Cir. 2004) Defendant omit the following:

"...We confront in this case what Justice Frankfurter termed the **litigation-provoking problem**," _Textile Workers v. Lincoln Mills, 353 U.S. 448, 470, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957)_ (Frankfurter, J., dissenting), **of "the presence of a federal issue in a state-created cause of action."** _Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 809-810, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986)_. In determining the presence or absence of federal jurisdiction, we apply the "`well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." _Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); see also Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908)_. "A defense is not part of a plaintiff's properly pleaded statement of his or her claim." _Rivet v. Regions Bank, 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998); see Franchise Tax, 463 U.S. at 10-11, 103 S.Ct. 2841_("[A] federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts that federal law deprives the defendant of a defense he may raise, or that a federal defense the defendant may raise is not sufficient to defeat the claim." (internal citations omitted)). Rather, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." _Gully v. First Nat'l Bank in Meridian, 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936)_. The federal issue "must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." _Id._ at 113, 57 S.Ct. 96(noting that the federal controversy cannot be "merely a possible or conjectural one"). Thus the rule enables the plaintiff, as "master of the complaint," to "choose to have the cause heard in state court" "by eschewing claims based on federal law." _Caterpillar,_ 482 U.S. at 399, 107 S.Ct. 2425." (emphasis added)

In "People of the State of Cal., supra." Court also had to distinguish Pan American Petroleum Corp. V Superior Court of Delaware, 366 U.S. 656, 81 S. Ct. 1302, 6 L. Ed 2d 584 (1960), in a manner which defeats removal. Defendants claim precedential value re: an Order. An Order does not constitute precedent. More importantly, Judge George's Order does not favor Defendants. The Order holds:

5435 Reno Hwy.
P.O. Box 1740

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

"State law claims that necessarily rely upon the determination of Federal question are sufficient grounds to give rise to removal." Plaintiffs State law claims do not intend to rely upon determination of Federal law.  Any such determination is superfluous. State law is not in conflict with Federal law and hence there is not preemption – just as there is no need to rely upon Federal law. Defendants' argument is premised upon a false assumption.

Defendants look to Dynegy and Sparta Surgical, but we note:

"...The Ninth Circuit has consistently upheld removal where the state-law claim was predicated upon federal law. See, e..g., Dynegy, No. 02-16619, --- F.3d ----, slip op. 8827, 8850 (9th Cir. Jul. 6, 2004); Sparta Surgical Corp. v. National Assoc. of Sec. Dealers, Inc., 159 F.3d 1209, 1212-13 (9th Cir.1998) (affirming removal because the state-law claims were predicated upon NASD regulations issued pursuant to federal securities law); Brennan v. Southwest Airlines Co., 134 F.3d 1405, 1409 (9th Cir.1998) (holding that plaintiff's Section 17200 claim was inherently federal because it sought refund of tax governed exclusively by federal law). In Dynegy, the Ninth Circuit held that an action alleging unfair competition under Section 17200 was inherently federal because plaintiff's claim rested entirely on alleged violations of federal tariff obligations under the Federal Power Act. Dynegy, No. 02-16619, slip op. at 8846. Though the plaintiff's complaint only asserted state-law claims, it cited the tariffs filed with Federal Energy Regulatory Commission, which was subject to the Federal Power Act. Id. at 8836, 8843 The tariffs filed directly implicated the federal regulatory regime. Thus, the Ninth Circuit reasoned that there must be a finding of a violation of the federal law before any state law liability on Section 17200 could exist. Id. at 8850. Similarly in Sparta, the Ninth Circuit explained that plaintiff had challenged the conduct of the National Association of Security Dealers ("NASD") and thus "[i]f NASD's action conformed to the rules, there can be no viable cause of action." 159 F.3d at 1212. Consequently, the Ninth Circuit reasoned that **"[t]he rule that state law claims cannot be alchemized into federal causes of action by incidental reference** ... has no application when relief is particularly predicated on a subject matter committed exclusively to federal jurisdiction." Id. at 1212-13.

///

10

KICK Lawton's Law Office

1

2 Defendants attempt to point to portions of the various causes of action to

3 establish the needed substantial Federal question, or that claims rest upon a finding

4 of a substantial Federal law violation.

5 There is absolutely no cause of action alleged by Plaintiff that rests on a

6 determination of Federal Law. As noted in the Motion For Remand, Plaintiff

7 specifically quotes each and every allegation.

8

9

10 Plaintiff's claims clearly sound in evaluation of the State Law, and the

11 common law, not Federal question or Federal law.

12 Defendants question adding Defendant AMY BLAZER under violations of

13 NRS 598D.100 stating that:

14 "Plaintiffs have not pointed to a single allegation in the complaint that Amy
Blazer is a mortgagee, beneficiary of a deed of trust, or other creditor (or
15 explained how Amy Blazer, as an employee of one of the defendants, could
be a mortgagee, beneficiary of a deed of trust, or other creditor)—as is
16 necessary to establish liability under N.R.S. 598D.100..."[ page 8 lines 7-11]

17

18 However such statement ignores the specific language indicating:

19 "...Amy Blazer and unknown others, knowingly or intentionally made , or
participated in the making of a home loan to Plaintiffs, based solely upon the
20 equity of the borrowers in the home property and without determining that the
borrowers has the ability to repay the home loan from other assets,..."

21

22 Defendants suggest since AMY BLAZER is not a lender the statutory

23 language does not apply. Should the Court follow such a suggestion Defendant

24 must next present the argument that agents and employees are not personally

25 liable for acts "not within the scope of their employment".

26 The salient argument by Plaintiff regarding his accepting the loan is that the

5435 Reno Hwy.
P.O. Box 1740

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Defendants through their agents, employees, and representatives specifically and

wrongfully represented:

> They (Plaintiffs) were qualified for the loan." But in fact, however, Plaintiff will show that the approval was based upon a payment to income ratio as to the "first leg" of the adjustable rate note, or the first period of the interest only period —not the full loan, not truly qualifying them for the loan.

Plaintiff further suggests that clear facts exists wherein Defendant lender

may very well assert that their employees, agents, or representatives were not

directed to approve loans in such an manner. The agents, employees or

representatives did not follow their "strict guidelines," and therefore the lender is not

liable for violation of the Nevada Fair Lending Act, the individual is liable for acts or

wrongs "out of the scope of her emplacement."[3]

The factual questions regarding acts of employees or agents is noted in

Restatement of Agency 2nd section 229 "Kind of Conduct within Scope of

Employment:" including:

"(1) To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.

---

[3] For Example: One employee was injured in an accident which occurred when a co-employee's car struck her car while they were both in the privately owned parking lot of their employer. The injured employee sued the other employee and her husband to recover damages for those injuries. The trial court entered summary judgment for the defendants finding that the Nevada Industrial Insurance Act rendered this co-employee immune from liability because the employer should be held liable because, inter alia, the accident occurred while the employees were acting within the scope of their employment. On appeal the court reversed and remanded for a determination of the co-employee's immunity which had not been discussed. The trial court, on remand, granted summary judgment to the defendants and found that the defendant was immune from liability because she was acting within the scope of her employment. The plaintiff appealed again. This time stated that if the parking of cars was within the scope and course of employment then the co-employee would be immune from liability. However, the parking of cars when an employee is arriving at or leaving work is only within the scope of employment, for the purposes of employer liability under the Act, if the employee was on a special errand. The court found, inter alia, that neither of these employees was on a special errand and therefore the employer could not be held liable. The court therefore reversed and granted summary judgment in favor of the plaintiff. Molino v. Asher, 96 Nev. 814, 618 P.2d 878, 880.

RICK Lawton's Law Office

5435 Reno Hwy.
P.O. Box 1740

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

(2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:

(a) whether or not the act is one commonly done by such servants;

(b) the time, place and purpose of the act;

(c) the previous relations between the master and the servant;

(d) the extent to which the business of the master is apportioned between different servants;

(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

(f) whether or not the master has reason to expect that such an act will be done;

(g) the similarity in quality of the act done to the act authorized;

(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;

Thus before the Defendant may with impunity state that no liability exists with regard to the conduct alleged by Plaintiff as to the known and named Nevada resident, and the claim that the Nevada Fair Lending Act does not applies to the Defendant  AMY BLAZER, Defendants must "skirt" around the conclusions that there are factual questions that exist to establish individual liability (i.e. should the Lender disavow her representations to Plaintiff as being within the scope of her employment, or agency relationship with the principle?)

Since the phrase "scope of the employment," is used for the purpose of determining the liability of the master for the conduct of servants, the ultimate question is whether or not it is just that the loss resulting from the servant's acts should be considered as one of the normal risks to be borne by the business in which the servant is employed.

The challenge in the case before the Court, regarding total liability is bridged between the guidelines of the Employer, and the acts of the employee motivated by various incentives (bonuses, perks, etc.). Whether the Employer may escape

KICK Lawton's Law Office

5435 Reno Hwy.
P.O. Box 1740

13

liability and transfer some of the blame onto the employee is a question of fact. When the ultimate conduct is determined by the trier of fact. AMY BLAZER, though not a licensed "lender" cannot escape violating NRS 598D.100 if it was her that created the "lure" to take the loan, and it was her that specifically utilized and promised that the equity that would be built in the home would be sufficient when the increase in payment hit.

Another set of facts would include the argument AMY BLAZER'S actions specifically prohibited by NRS 598D.100 would expose her under the independent liability is, obviously, the theory of the "conspiracy" to obtain loans when the borrower is not really approved for the loan suggested. The facts may very well include more bonuses, comps, or even additional compensation by approving loans in direct violation of the statute. To now claim she is not subject to liability because she is not a lender, would be the same as saying that the driver of the escape vehicle on a bank job is not liable because he is not a "robber."

It is Plaintiff's position that the "lender" may not hide behind the employees acts "outside the scope of emplacement," if they give incentives for the employee to approve loans in violation of the Act. Plaintiff's further argument that the employee may not shield themselves from liability for telling the borrower they are approved on loans that they cannot truly pay (that is the entire loan, not just the first leg, of an adjustable rate, or first period the interest only period). The individual claiming such approval was following guidelines of the Lender, when they went beyond the guidelines for the sole purpose of receiving the additional bonuses, or perks associated with a non conventional loan.

RICK Lawton's Law Office

1

2
   Additionally as National Banks (if Defendants claim that status) in the

3
action is not preempted by Federal Law. [ See: On  June 29, 2009, in *Cuomo v. The*

4
*Clearing House Association, L.L.C.,* 2009 U.S. LEXIS 4944.  The Supreme Court

5
rejected preemption per the National Bank Act – except with regard to visitorial

6
powers.  The matter of visitorial powers is irrelevant to this proceeding.]

7
   The removal statutes are strictly construed and any doubts about

8
removability must be resolved in favor of remanding the case to State Court.

9
Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 108-09 919410; Gaus v. Miles, Inc.

10
980 F.2d 564, 566 (9th cir. 1992).

11
   On a motion to remand, the removing Defendant faces a strong presumption

12
against removal and bears the burden of overcoming that presumption and

13
establishing that the requirements for removal have been satisfied. See e.g. Prize

14
Frize, Inc. v. Matrix (U.S.) Inc. , 167 F.3rd 1261 (9th Cir. 19990; Mcaa v. Mass. Mut.

15
Life Ins. Co. 330 F. Supp. 2nd 1143, 1146 (D. Nev. 2004).

16
   That burden of proof is ordinarily stated as a "preponderance of evidence."

17
Sanchez v. Monumental Life Ins. Co., 102 F.3rd 398, 403-04 (9th Cir. 1996); Gaus,

18
980 F.2d at 567. As noted in  §7.06[4], the Ninth Circuit has articulated different

19
burdens of proof for establishing the requisite amount-in-controversy in a diversity

20
removal. A Plaintiff seeking remand, however, has the burden of proof to an

21
express exception to remove exists. Breuer v. Jim's Concrete of Brevard, Inc. 538

22
U.S. 691, 698 (2003); Serrano v. 180 Connect, Inc., 478 F.3rd 1018, 1023-24 (9th

23
Cir. 2007).

24

25

26

5435 Renc Hwy.
P.O. Box 1740

The grounds for remand listed in § 1447 (c) are described as a lack of subject matter jurisdiction and "and defect other than lack of subject matter jurisdiction." Those grounds, however, are exclusive. See Carnegie-Mellon University v. Cohill, 484 U.S. 343, 353-57 (1988). For example, in state Engineer v. South Fork Bank of the Te-Moak Tribe, 114 F. Supp,. 2nd 1046, 1053-54 (D. Nev. 2000), after initially denying the motion to remand, the Nevada district court, on reconsideration, granted remand on grounds of abstention. See also Thermtron Prods v. Hermansdorfer, 423 U.S. 336, 344-46, (1976) (no remand based on crowed court docket); Pelleport Investors, Inc. v. Budco Quality Theatres, Inc. 741 F.2d 273 (9th Cir 1984) (remand based on forum selection clause).

An order of remand may also be based on the supplemental jurisdiction provision, 28 USC § 1367(a), which allows the Federal Court to exercise jurisdiction over State law claims that form part of the same case or controversy. Under 28 USC § 1367 (c), a District Court has discretion " to decline to exercise supplemental jurisdiction over" an action if it " has dismissed all claims over which it has original jurisdiction." See also City of Chicago v. Int'l Coll. Surgeons, 522 U.S. 156, 172-74 (1997); O'Connor v. Nevada, 27 F.3rd 357, 362 (9th Cir. 1997) In the Ninth circuit, if all claims over which a District Court has original jurisdiction have been dismissed before trial in a removed action, the remaining State-law claims should ordinarily be remanded to State Court. See Acri v. Varian Assocs.  114 F.3rd 999, 1001 (9th Cir. 1997).

///

///

KICK Lawton's Law Office

5435 Reno Hwy.

RICK LAWTON's Law Office

5435 Reno Hwy.
P.O. Box 1740
Fallon, Nevada 89406
Ph:: 775-867-5599
FAX: 775-867-2559
lawtonrick@earthlink.net

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

The Ninth Circuit has found nothing wrong with Plaintiffs promptly dropping Federal claims and seeking to have a matter remanded. Baddie v. Berkeley Farms, 64 F.3rd 487, 490-91 (9th Cir. 1995).

## CONCLUSION

Defendants have opposed the Motion To Remand asserting that Plaintiff made reference to certain Federal Violations, and executed certain forms regarding the transaction approved by Federal Acts presents a cause of action resting in substantial Federal Question, or to be resolved by examining a Federal Law.

Defendants have construed the "casual references" to Federal violations as the sole and exclusive basis to indicate that the State claims are based on a Federal Question or interpretation of Federal Law.

Plaintiffs in their Complaint however, have made it clear that they look to the named Defendants regarding their violations of common law, contract and torts. They specifically address the protection Nevada Laws give Nevada residence involving lending transaction, full and honest disclosures, and conspiracy.

The authorities supporting Defendants' claims are not authority for which they are stated, in that many of the cases only attempt to utilize part of the holding.

Plaintiff is the master of his case. Plaintiff deliberately pled the case so as to refrain from invoking this Court's limited jurisdiction.

Ninth Circuit reasoned that **"[t]he rule that state law claims cannot be alchemized into federal causes of action by incidental reference** ...

///

///

Additionally:

"...[the] so-called "arising under" or "federal question" jurisdiction has long been governed by the well-pleaded-complaint rule, which provides that "federal jurisdiction exists only when a federal question is presented **on the face of the plaintiff's properly pleaded complaint**." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). A federal question "is presented" when the complaint invokes federal law as the basis for relief. It does not suffice that the facts alleged in support of an asserted state-law claim would *also* support a federal claim. "The [well-pleaded-complaint] rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Ibid.* See also *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913)....(emphasis added)

To invoke federal question jurisdiction, Plaintiff's claim must be based on some federal law independent of federal question statute.[SEE: U.S. on Behalf of F.T.C. v. Larkin, Hoffman, Daly & Lindgren, Ltd, D.Minn.1993, 841 F.Supp. 899. ] ..."

Plaintiff respectfully requests that the matter be remanded to the State Court for further proceedings.

DATED: This 4nd day of November, 2009.

                             /s/
                           RICK LAWTON, Esquire
                           Attorney for Plaintiff
                           NSB # 00694

RICK Lawton's Law Office

5435 Reno Hwy.
P.O. Box 1740
Fallon, Nevada 89406
Ph:: 775-867-5599
FAX: 775-867-2559
lawtonrick@earthlink.net

1

2

## CERTIFICATE OF SERVICE

3

I hereby certify that on November 4 , 2009, I electronically filed the foregoing:

4

**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO**
**REMAND TO THE THIRD JUDICIAL DISTRICT COURT, STATE OF NEVADA**

5

6

Using the CM/ECF system which will send a notice of electronic filing to all parties

7

as listed on the Notice of Electronic Filing.

8

9

10

_____/s/ Lavinia Johnston_____
Lavinia Johnston

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

RICK Lawton's Law Office

5435 Reno Hwy.
P.O. Box 1740
Fallon, Nevada 89406
Ph:: 775-867-5599
FAX: 775-867-2559
lawtonrick@earthlink.net